Opinion issued June 8, 2006        
     












In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00500-CR




ALBERT MALDONADO ORTIZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 984607

 
MEMORANDUM OPINION
            A jury convicted appellant, Albert Maldonado Ortiz, of possession of 400
grams or more of cocaine with intent to deliver. See Tex. Health & Safety Code
Ann. §§ 481.102, 481.112(f) (Vernon 2003). The trial court assessed punishment
at 45 years in prison and assessed a $10,000 fine. See id. We determine (1) whether
the trial court erred by not charging the jury with an entrapment instruction and (2)
whether the evidence was legally and factually sufficient to support appellant’s
conviction for possession, either as the primary actor or as a party to the offense. We
affirm. 
Background 
          Larry Clay, the confidential informant (“the CI”), had an agreement with the
District Attorney’s office to provide it with information that would recover 10
kilograms of cocaine in exchange for the dropping of the charges against him in
another case. On April 15, 2004, police officers arranged for him to stay at the
Baymont Hotel. The CI, who had known Richard Nash and appellant prior to that
date, called Nash to make a drug deal for five to10 kilograms of cocaine. Appellant
and Nash worked together to conduct the drug deal. After the CI ordered the cocaine
from Nash, appellant then made phone calls to obtain the cocaine. Nash and the CI
followed appellant in a separate vehicle to two apartment complexes to wait for “the
[drug] deal to go through.” The CI and Nash returned to the Baymont Hotel, where
Houston Police Department (“HPD”) undercover Officer Al Parker drove up and
showed Nash the money for the drug deal. Nash then called appellant and told him
that he had seen the money. The CI and appellant went into unit 9007 of the Hayes
Place apartments together while Nash stayed in his car to wait for the money. Jorge
Moreno Lopez, who had leased apartment 9007, and an unidentified male were in the
apartment. The unidentified male left for approximately 20 minutes and returned
with five kilograms of cocaine. Lopez put the package on the counter, and appellant
cut it open and inspected the cocaine. The CI called Officer Parker, telling him that
the cocaine was good.
          HPD Officer John Garza knocked on apartment 9007’s door. Lopez gave
police consent to search his apartment. Officer Garza saw appellant walking from the
bedroom area when Lopez opened the apartment door. Officers found two kilograms
of cocaine on the kitchen counter in plain view and three kilograms of cocaine in the
bedroom closet. Appellant gave police officers permission to search his truck. 
Underneath the floorboard of his truck, police officers found approximately $15,000
in cash, the wholesale price of one kilogram of cocaine. Later, a drug dog alerted for
drugs on that money.
          Appellant and Nash were tried before the same jury.


 The jury was charged on
the law of parties and returned a general verdict that appellant was guilty of
possession with intent to deliver 400 grams or more of cocaine.
Entrapment Instruction in Jury Charge 
          In his first point of error, appellant contends that “[t]he trial court committed
reversible error in overruling appellant’s request for an instruction on the law of
entrapment over appellant’s timely objection.”
          At trial, appellant requested a jury instruction on the defensive issue of
entrapment, but the trial court denied his request. If there is evidence of a defensive
issue from any source, regardless of whether the evidence is weak or contradicted, the
defendant is entitled to a jury instruction on that defensive issue. Hayes v. State, 728
S.W.2d 804, 807 (Tex. Crim. App. 1987); Kimbrough v. State, 959 S.W.2d 634,
639–40(Tex. App.—Houston [1st Dist.] 1995, pet. ref’d). 
            Entrapment is a defense, not an affirmative defense, to prosecution if an
accused can prove that he committed the charged crime through the inducement of
a law enforcement official using sufficient persuasion or other means. Tex. Pen.
Code Ann. § 8.06(a) (Vernon 2003). If the criminal intent resulting in the
commission of an offense originates in the mind of the police officer, and not the
accused, entrapment has occurred. Lopez v. State, 574 S.W.2d 563, 565(Tex. Crim.
App. 1978). However, if law enforcement officials merely afford the accused an
opportunity to commit the crime, the entrapment issue is not raised. Tex. Pen. Code
Ann. § 8.06(a).
          To raise entrapment, a defendant must produce evidence that (1) he was
actually induced to commit the offense and (2) the inducement “was such as to cause
an ordinarily law-abiding person of average resistance nevertheless to commit the
offense.” England v. State, 887 S.W.2d 902, 913–14 (Tex. Crim. App. 1994). The
first prong is a subjective test; the defendant must show that, because of police
persuasion, he was induced to act. Torres v. State, 980 S.W.2d 873, 876 (Tex.
App.—San Antonio 1998, no pet.). The second prong is an objective test. Id.; Flores
v. State, 84 S.W.3d 675, 682 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). We
note that although the defense of entrapment is not available to a defendant who
denies the commission of the offense, it is available to a defendant who pleads not
guilty and who does not take the stand or offer any testimony inconsistent with the
commission of the crime. Melton v. State, 713 S.W.2d 107, 112 (Tex. Crim. App.
1986). 
          Appellant argues that “[t]he large amount of cocaine that [the CI] purportedly
wanted to purchase, with the correspondingly high amount of cash and profit to be
made, was sufficient to induce an ordinary law abiding [citizen] of average resistance
to break the law.” Appellant further argues that the criminal intent “originated in [the
CI’s] mind, not with appellant or co-defendant.” 

          Assuming that appellant’s testimony meets the first prong of the two-part test,
by raising evidence that he was induced by the CI to commit the crime because of the
large amount of cash, we examine whether the CI’s inducements would have
persuaded an ordinary law-abiding person of average resistance to commit the crime.
          The purely objective part of the England test is described as follows:
The hallmark of a purely objective test for entrapment is
the hypothetical person. Once the defendant can show he
has been the target of persuasive police conduct, regardless
of whether he was in fact persuaded to commit the offense,
the focus is directed to the police conduct itself. The
question becomes whether the persuasion used by the law
enforcement agent was such as to cause a hypothetical
person—an ordinarily law abiding person of average
resistance—to commit the offense, not whether it was such
as to cause the accused himself, given his proclivities, to
commit it.
England, 887 S.W.2d at 908. 
          The amount of persuasion used to induce an ordinary, law-abiding person of
average resistance who is not pre-disposed to commit the offense will vary from case
to case. Torres, 980 S.W.2d at 877; Sebesta v. State, 783 S.W.2d 811, 814 (Tex.
App.—Houston [1st Dist.] 1990, pet. ref’d). Affirmative findings of objective
inducement are generally limited to outrageous law enforcement actions occurring in
instances of the rarest and most egregious government misconduct. Hubbard v.
State, 770 S.W.2d 31, 39 (Tex. App.—Dallas 1989, pet. ref’d).
          After a careful review of the evidence, we hold that there is no evidence that
an ordinary law-abiding person of average resistance, in this instance, would have
been persuaded to commit the drug deal by the conduct of the CI as described by
appellant. The evidence showed that the CI called Nash to place an order to purchase
10 kilograms of cocaine. Nash and the CI agreed on a price of $16,000 per kilogram
of cocaine. Nash, not the CI, thereafter called appellant to obtain the cocaine. The
CI, Nash, and appellant drove to several apartment complexes while appellant was
“trying to make the deal” for the cocaine. When they returned to the Baymont Hotel,
appellant demanded to see the money. Nash and the CI went to the parking lot, where
they met Officer Parker, who showed Nash the money. In short, an average, law-abiding citizen would not have been induced to commit a crime merely because of the
“high amount of cash and profit to be made from the drug deal.” We hold that there
was no evidence to justify submission of an instruction on entrapment and that the
trial court thus did not err in denying appellant’s proposed jury instruction for
entrapment.
            Consequently, we overrule appellant’s first point of error. 
Legal and Factual Sufficiency
          In his second, third, fourth, and fifth points of error, appellant contends that the
evidence was legally and factually insufficient to support his conviction for
possession, either as the principal actor or as a party to the offense.A.Standard of Review
          A legal-sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.).
          In a factual-sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof of beyond a reasonable doubt could not have been met. Escamilla
v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144
S.W.3d 477, 481–83 (Tex. Crim. App. 2004)). In conducting a factual-sufficiency
review, we must discuss the evidence that, according to appellant, most undermines
the jury’s verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 
          Under either standard of review, we must defer appropriately to the fact-finder
to avoid substituting our judgment for its judgment. Zuniga, 144 S.W.3d at 481–82. 
Although our analysis considers all of the evidence presented at trial, we may not
re-weigh the evidence or substitute our judgment for that of the fact-finder. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Our evaluation may not intrude
upon the fact-finder’s role as the sole judge of the weight and credibility accorded any
witness’s testimony. Cain v. State, 958 S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997).
The fact-finder alone determines what weight to place on contradictory testimonial
evidence because that determination depends on the fact-finder’s evaluation of
credibility and demeanor. Id. at 408–09. As the determiner of the credibility of the
witnesses, the fact-finder may choose to believe all, some, or none of the testimony
presented. Id. at 407 n.5.
          In reviewing a sufficiency-of-the-evidence challenge, the standard for review
is the same for both direct and circumstantial evidence. Sharp v. State, 707 S.W.2d
611, 614 (Tex. Crim. App. 1986).
B.      Possession of Controlled Substance With Intent to Deliver
          In a possession-with-intent-to-deliver case, the State must prove that the
defendant (1) exercised care, custody, control, or management over the controlled
substance; (2) intended to deliver the controlled substance to another; and (3) knew
that the substance in his possession was a controlled substance. Tex. Health &
Safety Code Ann. §§ 481.002(38) (Vernon Supp. 2005), 481.112(a) (Vernon 2003);
Nehm v. State, 129 S.W.3d 696, 699 (Tex. App—Houston [1st Dist.] 2004, no pet.). 
Possession is voluntary “if the possessor knowingly obtains or receives the thing
possessed or is aware of his control of the thing for a sufficient time to permit him to
terminate his control.” Tex. Pen. Code Ann. § 6.01(b) (Vernon 2003). 
          When a defendant is not in exclusive possession of the place where the
controlled substance is found, the State must prove additional independent facts and
circumstances that affirmatively link the defendant to the contraband in such a way
that it can be concluded that the defendant had knowledge of the contraband and
exercised control over it. Nehm, 129 S.W.3d at 699. Affirmative links are established
when the evidence, direct or indirect, establishes “that the accused’s connection with
the drug was more than just fortuitous.” Poindexter v. State, 153 S.W.3d 402, 405–06
(Tex. Crim. App. 2005) (quoting Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim.
App. 1995)). Courts have identified a number of factors that may help to show an
affirmative link to controlled substances. See, e.g., id. at 406; Gilbert v. State, 874
S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d). It is not the
number of factors present that is important, but, rather, the “logical force” that they
create to prove that the defendant knowingly possessed the controlled substance. 
Nehm, 129 S.W.3d at 699–700.
          The jury was charged on the law of parties. Under the law of parties, a person
is criminally responsible for the conduct of another if, “acting with intent to promote
or assist the commission of the offense, he solicits, encourages, directs, aids, or
attempts to aid the other person to commit the offense.” Tex. Pen. Code Ann. §
7.02(a)(2) (Vernon 2003). The evidence must show that, at the time of the offense,
the parties were acting together, each contributing some part toward the execution of
their common purpose. Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App.
1994). “In determining whether a defendant participated in an offense as a party, the
factfinder may examine the events occurring before, during, and after the commission
of the offense and may rely on actions of the defendant that show an understanding
and common design to commit the offense.” Id. The accused’s mere presence at a
location at which narcotics are also present and over which he does not exercise sole
control does not necessarily establish possession; rather, some evidence must also
affirmatively link him to the contraband. McGoldrick v. State, 682 S.W.2d 573, 578
(Tex. Crim. App. 1985). 
          Viewing the evidence in the light most favorable to the verdict, we conclude
that the jury could have reasonably determined that appellant was guilty of the
offense as a party because he intentionally acted to promote or to assist in the
commission of the offense. The evidence showed that appellant’s responsibility in
the drug transaction was to obtain the drugs. Appellant was present during the
negotiations for the sale of the cocaine to the CI. The CI, Nash, and appellant drove
to several apartment complexes while appellant was “trying to make the deal” for the
cocaine. Appellant led Clay and Nash to an apartment leased by Lopez, where the
cocaine was recovered. Appellant was present during the search of the apartment
where the cocaine was seized. Two kilograms of cocaine were in plain view on the
kitchen counter. Officer Garza saw appellant walking from the bedroom area, where
police discovered an additional three kilograms of cocaine and a pistol in the closet. 
Underneath the floorboard of appellant’s truck, police officers found approximately
$15,000 in cash, on which a drug dog detected drugs. Viewing the evidence in the
light most favorable to the verdict, we hold that a reasonable trier of fact could have
found beyond a reasonable doubt that appellant possessed the cocaine found in the
apartment, with intent to deliver it, as a party to the offense. See Johnson, 23 S.W.3d
at 7; Howley, 943 S.W.2d at 155. We thus hold that the evidence was legally
sufficient to prove appellant’s guilt as a party to the offense.
          During the trial, appellant did not present any witnesses of his own to offer
contrary evidence. Rather, to challenge the factual sufficiency of the evidence,
appellant argues only that “[g]iven the facts as produced at trial, it is clear that the
cocaine was controlled by the codefendants Lopez and Nash, and not the appellant.” 
Specifically, in his brief on appeal, appellant concedes that “[t]he evidence is
undisputed that the appellant acted as a middleman between [the CI] and the
codefendants Lopez and Nash, and with the undercover officers. However, the
appellant was not charged with the offense of unlawful delivery of cocaine.” As
stated previously, the jury was charged on the law of parties. See Tex. Pen. Code
Ann. § 7.02(a)(2) (Vernon 2003). A person is criminally responsible for the conduct
of another if, “acting with intent to promote or assist the commission of the offense,
he solicits, encourages, directs, aids, or attempts to aid the other person to commit the
offense.” Id. Accordingly, appellant could have been found guilty of possession of
400 grams or more of a controlled substance with intent to deliver even if the cocaine
was solely controlled by Nash or Lopez because appellant’s having acted as a
“middleman” assisted Nash and Lopez in the commission of the offense.


 See Tex.
Health & Safety Code Ann. §§ 481.102, 481.112(a).
          Viewing the evidence in a neutral light, we hold that a reasonable trier of fact
could have found beyond a reasonable doubt that appellant possessed the cocaine
found in the apartment, with intent to deliver it, as a party to the offense. See
Escamilla, 143 S.W.3d at 817. We thus hold that the evidence was factually
sufficient to prove appellant’s guilt as a party. 
          We overrule appellant’s second, third, fourth, and fifth points of error. Conclusion
 We affirm the judgment of the trial court. 
 
                                                              
                                                             Tim Taft
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Taft and Nuchia. 
Do not publish. Tex. R. App. P. 47.2(b).