Opinion to: SR TJ EVK ERA GCH LCH JB JS MM TGT
















Opinion
issued April 14, 2011



 

 

 

The

Court
of Appeals

For
The

First
District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NOS. 01-08-00828-CR

          01-08-01015-CR

          01-08-01016-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



rio shareese jones, Appellant

 

V.

 

THE
STATE OF TEXAS,
Appellee

 

 



On
Appeal from the 405th District Court

Galveston
County, Texas

Trial
Court Case Nos. 07CR3567, 07CR3568 & 07CR3569

 

 

 



OPINION ON REHEARING

Appellant Rio
Shareese Jones has filed motions for rehearing and for reconsideration en banc.  We grant rehearing and withdraw our majority opinion
and judgment of January 31, 2011, issuing the following in their stead.  Our disposition of the appeals remains
unchanged.  Because we are issuing a new majority
opinion, the motion for en banc reconsideration of our prior opinion is
moot.  See Brookshire Bros., Inc. v.
Smith, 176 S.W.3d 30, 41 & n.4 (Tex. App.—Houston [1st Dist.] 2004,
pet. denied).

Jones
was convicted by a jury of the offenses of (1) possession of a firearm by a felon,[1]
(2) possession with intent to deliver cocaine weighing more than four
grams but less than 200 grams,[2]
and (3) possession with intent to deliver methylenedioxy methamphetamine (ecstasy)
weighing more than four grams but less than 400 grams.[3]  Jones
pleaded true in each offense to prior felony convictions for aggravated assault
and arson.  Finding Jones to be a habitual
offender, the jury assessed punishment for each offense at 99 years in prison, and
the judgments state that all three sentences will run concurrently.  See
Tex. Penal Code Ann. § 12.42(d)
(West Supp. 2010).  Jones brings six
issues on appeal.  He claims the trial court
erred in denying his motions to suppress evidence collected pursuant to a search
warrant, based on his allegations that the supporting affidavit failed to
demonstrate probable cause and contained false statements.  He also appeals from the trial court’s denial
of his requests for a jury instruction concerning the legality of the
search and for disclosure of an informant’s identity.  Finally, he challenges the legal and factual insufficiency of the
evidence supporting his conviction for possession of a firearm by a
felon. 
We affirm.

Background

          In September 2007, Officer A. Bjerke of
the Texas City Police Department Special Crimes Unit met a confidential
informant from whom he received information about “crack cocaine being sold” at
a home located at 219 North Pine Road in Texas City, a residence occupied
by appellant Rio
Sharesse Jones.  The informant had been to the house numerous
times, the latest time being about two nights prior to the meeting.  Bjerke began a narcotics investigation and
learned from another Texas City police officer that a City of Dickinson police
officer had information from a second confidential informant about crack
cocaine being sold at that address.  On
November 5, 2007, Bjerke arranged a meeting with the second confidential
informant and, that same night, set up a “controlled buy” at the home, using
the second informant.  Bjerke witnessed
the controlled buy and saw Jones come to the door to make the sale.  The informant returned with a rock of crack
cocaine weighing 0.8 grams.  Just after
midnight on November 6, Bjerke made statements under oath in an affidavit in
support of a search warrant for 219 North Pine Road.  The affidavit described the initial contact
with the first informant and the subsequent controlled buy, but it did not specify
the dates of the described events.  The
affidavit also requested authorization for a no-knock entry into the home on
the basis that Bjerke had received information from a confidential informant
that Jones kept handguns and long guns in the house and because he had past
arrests for evading and resisting arrest. 
At 12:24 a.m. that same day, the magistrate issued a no‑knock‑entry
search warrant, and Texas City police executed the warrant.

When
the police arrived at 219 North Pine, there were two men and one woman in the
driveway.  One of the men was Jones.  The woman, later identified as Tamisha
Thomas, remained in the driveway as the police approached, but the two men ran
into the house.  One team of police followed
the men into the house and found them in one of the bedrooms along with a third
man.  A .22 caliber rifle was seen in
plain view, leaning against a dresser.  In
the closet, the police found women’s clothing and shoes, men’s and women’s toiletries,
a bag containing powder cocaine, a large bottle of cough syrup containing
codeine, and a woman’s bag, containing a letter to “Misha Thomas” at a
Dickinson, Texas address.  In that same
room, police also found a shirt with a crack pipe in the pocket, a letter from
the Social Security Administration addressed to Jones at a La Marque, Texas
address, and a receipt for transmission service from a Texas City business,
made out to Jones, dated October 24, 2007, and listing an address for Jones of
“219 Pine, TC, Texas.”

Jones
was captured in the bedroom containing the rifle and the letter addressed to
him.  Police found $199 in his
pocket.  According to Texas Workforce
Commission records checked by police, he was not employed and had not been
employed for some time.  The others
present were also arrested, and police found a small amount of crack cocaine in
one man’s pocket and a small amount of powder cocaine in Thomas’s pocket.

The
second bedroom in the two-bedroom home had no beds, only a counter with drawers,
a television, a computer, a small coffee table, and a reclining chair.  Police found ecstasy tablets in a bag in the
closet and a notebook ledger on the coffee table listing names and
amounts.  On the counter and in drawers
under the counter, police found “three to four” digital scales, a “cookie” of
crack cocaine, crack cocaine in a plastic bag, powder cocaine, a bottle of
codeine cough syrup, various kinds of pills, and some currency taped together in
stacks of one hundred dollars.  On the
counter also was Jones’s wallet, which contained his driver’s license.  The license had an expiration date of July
28, 2012 and a La Marque, Texas address. 
In a box on the counter near the wallet were some prescription medicines
in Jones’s name, filled at a clinic in Texas City.  Police also found some insulin for Jones and a
glucometer used to measure blood sugar.  In
a small black cabinet full of movie DVDs and video games, located on the same counter
and near Jones’s wallet and medicine, were two digital scales and a loaded .38 Special
handgun.  Also found in the house were numerous
baby bottles, razor blades, many measuring cups, a bag containing bullets, a
bag containing $1,150, and a videocamera by the front door, pointing toward the
roadway.  Nothing other than the baby
bottles suggested the presence of a child in the house, and officers testified
that codeine is often found, stored, and transported in baby bottles.  Police also found a baby bottle with a spoon
with what was thought to be codeine in it.

Analysis

I.                 
Probable cause to support search warrant

Jones’s first issue challenges the trial court’s denial of
his motion to suppress evidence from the search of his home based on an alleged
lack of probable cause.  He filed a
motion in each case to suppress the evidence seized as a result of the search
warrant.  He alleged that his federal
constitutional rights and his state constitutional and statutory rights were
violated because the supporting affidavit did not reflect sufficient probable
cause in that it: (1) failed to show that the act or event upon which
probable cause was based occurred within a reasonable time period prior to
making the affidavit; (2) failed to state sufficient underlying
circumstances to establish the credibility and reliability of the confidential
informants; and (3) lacked sufficient underlying circumstances which would
permit the conclusion that the alleged contraband was at the location claimed.

          At the hearing on the motions to
suppress, no evidence other than the search warrant was offered by either the
State or Jones.  Both sides tendered
argument on the issues raised in Jones’s motions.  The trial court denied the motions to
suppress, and, on the request of Jones, entered findings of fact, including, in
relevant part, the following:

1.       Affiant Officer [A.] Bjerke submitted a
Search Warrant with Affidavit for Search Warrant to Judge Darrell Apfell on
November 6, 2007.

2.       Judge Apffel signed the Search Warrant
and Affidavit at 12:24 am on said date, indicating that probable cause had been
satisfied.

3.       Officer Bjerke and other police officers
executed the search warrant on November 6, 2007 and seized 17 items including
illegal narcotics, guns, and U.S. currency.

4.       Officer Bjerke and other police officers
arrested Rio Shareese Jones for the offense of Possession of Firearm by Felon,
POCS: Cocaine With Intent to Deliver; POCS: Codeine with Intent to Deliver, and
POCS: MDMA with Intent to Deliver. 

The trial court also entered the following conclusions
of law:

1.       The Affidavit for Search Warrant does
reflect sufficient probable cause to justify the issuance of the Search
Warrant.

2.       The Affidavit for Search Warrant contains
sufficient underlying circumstances to establish the credibility and reliability
of the confidential informant.

3.       The Affidavit for Search Warrant contains
sufficient underlying circumstances which would permit the conclusion that the
alleged contraband was at the location in which it was claimed.

4.       The Affidavit for Search Warrant contains
sufficient information to show that the act or event upon which probable cause
was based occurred within a reasonable time prior to making the affidavit.

5.       The Affidavit for Search Warrant contains
sufficient information to establish probable cause that the alleged contraband
would be at the location at the time the search warrant was signed and
executed.

6.       Therefore, since Probable Cause was found
by Judge Apffel and sustained by this Court, the results of the Search Warrant
are admissible as a matter of law and fact in trial and were not obtained in
violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United
States Constitution, Article I, Section 9 of the Texas Constitution, or Article
38.23 of the Texas Code of Criminal Procedure. 
Thus, Rio Shareese Jones was arrested with probable cause and not in
violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United
States Constitution, Article I, Sections 9, 10, or 19 of the Texas Constitution.

Before the start of voir dire, Jones’s trial counsel objected
to the admission at trial of any evidence obtained as a result of the search
warrant.  The trial court granted Jones a
running objection to this evidence.

a.     Standard of review 

We review a trial court’s decision to
deny a motion to suppress under a bifurcated standard of review, giving almost
total deference to the trial court’s determination of historical facts that
depend on credibility, and reviewing de novo the trial court’s application of
the law to those facts.  Hubert v. State, 312 S.W.3d 554, 559
(Tex. Crim. App. 2010); see Carmouche v. State, 10 S.W.3d 323, 327–28
(Tex. Crim. App. 2000).  When a trial
court makes explicit findings of fact, we determine whether the evidence,
viewed in the light most favorable to trial court’s ruling, supports those fact
findings.  See State v. Iduarte, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); State v. Kelly, 204 S.W.3d 808, 818
(Tex. Crim. App. 2006).  The trial
court’s legal conclusions, on the other hand, are subject to de novo review,
not deference.  See Hubert, 312 S.W.3d at
559; State v. Sheppard, 271 S.W.3d
281, 291 (Tex. Crim. App. 2008).

When a defendant raises a complaint
that a search should have been suppressed because the magistrate had no
probable cause to issue a search warrant, we do not review the magistrate’s
determination of probable cause de novo, but instead apply a “great deference”
standard of review.  Swearingen v. State, 143 S.W.3d 808, 810–11 (Tex. Crim. App. 2004);
see also Illinois v. Gates, 462 U.S. 213, 234–37, 103 S. Ct. 2317, 2330–31
(1983).  Under Texas law, “[n]o search
warrant shall issue for any purpose . . . unless sufficient facts are first
presented to satisfy the issuing magistrate that probable cause does in fact
exist for its issuance[,]” and “[a] sworn affidavit setting forth substantial
facts establishing probable cause shall be filed in every instance in which a
search warrant is requested[.]”  Tex. Code Crim. Proc. Ann. art. 18.01(b)
(West Supp. 2010).  Appellate review of
an affidavit in support of a search warrant is conducted under a highly
deferential standard, interpreting the affidavit in a commonsensical and
realistic manner, and deferring to all reasonable inferences that a magistrate
could have made.  Rodriguez v. State, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007).

In
Illinois v. Gates, the United States Supreme Court reaffirmed the
traditional totality‑of‑the‑circumstances analysis for Fourth
Amendment probable‑cause determinations:

The task of
the issuing magistrate is simply to make a practical, common-sense decision
whether, given all the circumstances set forth in the affidavit before him,
including the “veracity” and “basis of knowledge” of persons supplying hearsay
information, there is a fair probability that contraband or evidence of a crime
will be found in a particular place.  And
the duty of a reviewing court is simply to ensure that the magistrate had a
“substantial basis for . . . conclud[ing]” that probable cause existed.

 

Gates, 462 U.S. at 238–39, 103 S. Ct. at 2332
(citing Jones v. United States, 362
U.S. 257, 271, 80 S. Ct. 725, 736 (1960)). 
The Court of Criminal Appeals has construed this “flexible and
nondemanding” standard to apply to the Texas Constitution as well.  Rodriguez,
232 S.W.3d at 60.  Our inquiry, then, is
whether there are sufficient facts, coupled with inferences from those facts,
to establish a “fair probability” that evidence of a particular crime will
likely be found at a given location.  See id. at 62.  Our review is limited to the four corners of
the affidavit; statements made during a motion to suppress hearing do not
factor into our determination.  Massey v. State, 933 S.W.2d 141, 148
(Tex. Crim. App. 1996); McKissick v.
State, 209 S.W.3d 205, 212 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).

The Supreme Court has explained how
we must review determinations of probable cause:

[A]fter‑the‑fact
scrunity by courts of the sufficiency of an affidavit should not take the form
of de novo review.  A magistrate’s “determination of probable
cause should be paid great deference by reviewing courts.”  “A grudging or negative attitude by reviewing
courts toward warrants” is inconsistent with the Fourth Amendment’s strong
preference for searches conducted pursuant to a warrant; “courts should not
invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather
than a commonsense, manner.”

 

Gates, 462 U.S. at 236, 103 S. Ct. at 2331
(citations omitted) (quoting Spinelli v.
United States, 393 U.S. 410, 419, 89 S. Ct. 584, 591 (1969); United States v. Ventresca, 380 U.S.
102, 108, 109, 85 S. Ct. 741, 746 (1965)). 
The rationale for this holding is that, as was true in this case,
affidavits “are normally drafted by nonlawyers in the midst and haste of a
criminal investigation.  Technical
requirements of elaborate specificity once exacted under common law pleadings
have no proper place in this area.”  Gates, 462 U.S. at 235, 103 S. Ct. at
2330–31 (quoting Ventresca, 380 U.S.
at 108, 85 S. Ct. at 746).  The
traditional standard for judicial review of a magistrate’s probable‑cause
determination “has been that so long as the magistrate had a ‘substantial basis
for . . . conclud[ing]’ that a search would uncover evidence of
wrongdoing, the Fourth Amendment requires no more.”  Gates,
462 U.S. at 236, 103 S. Ct. at 2331 (quoting Jones, 362 U.S. at 271, 80 S. Ct. at 736).  “This ‘substantial basis’ standard of review
‘does not mean the reviewing court should be a rubber stamp but does mean that
the magistrate’s decision should carry the day in doubtful or marginal cases,
even if the reviewing court might reach a different result upon de novo
review.’”  Flores v. State, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010)
(quoting 6 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth
Amendment § 11.7(c), at 452 (4th ed. 2004 & Supp. 2009–2010)).

b.    Location

          Jones’s
first contention is that the affidavit was insufficient because it did not
adequately describe the premises to be searched.  This argument was not made in Jones’s written
motion to suppress.  The affidavit
describes the residence at 219 North Pine Road in considerable detail, but
at the hearing on the motion to suppress, Jones’s counsel argued that the
affidavit was inadequate because it made no mention of the fact that the
residence consisted of a duplex and a garage apartment.  Jones, however, provided no evidence of this
at the hearing.

          On appeal,
Jones does not claim that the argument of his counsel was evidence, but instead
states that this argument was “recounted without contradiction.”  It is axiomatic that the argument of counsel
is not evidence.  See Hutch v. State, 922
S.W.2d 166, 173 (Tex. Crim. App. 1996). 
Jones has therefore failed to provide an evidentiary basis to contest
the adequacy of the affidavit with respect to its description of the location
to be searched.

c.     
Credibility and reliability of
informant

          Jones
next contends that the affidavit was insufficient to show probable cause
because the affidavit’s description of the initial confidential informant
contains no statement about his reliability or credibility and because Bjerke
had no personal knowledge about the second confidential informant’s reliability
or credibility.

          The affidavit stated that the Dickinson Police Department
had established that the second confidential informant was reliable and
credible.  There is no bar on the use of
hearsay in determining probable cause.  See Jones v. United States, 362 U.S. at
269–71, 80 S. Ct. at 735–36; Brinegar v.
United States, 338 U.S. 160, 172–73, 69 S. Ct. 1302, 1309 (1949).  In a post‑Gates opinion, the Texas Court of Criminal Appeals held that
hearsay may be used to show probable cause so long as there is a substantial
basis for crediting the hearsay.  Wilkerson v. State, 726 S.W.2d 542, 545
(Tex. Crim. App. App. 1986).  Here,
Bjerke’s affidavit went beyond a mere statement that the second confidential informant was reliable and
credible.  The affidavit referred to
previous instances in which the informant provided correct information to the
police that led to the seizure of controlled substances and arrests.  Jones neither challenges this assertion on
appeal, nor argues that a law enforcement officer cannot rely on information
from a fellow officer to establish probable cause.  The affidavit also referenced Bjerke’s own
investigation and establishment of the controlled buy, in which the
confidential informant was utilized.

          While Bjerke
testified at trial that there was no basis for the initial informant’s
reliability or credibility, the second informant
supplied the same information to the police, i.e., that Jones was selling crack
cocaine.  The
failure of the affidavit to establish the first informant’s reliability or
credibility is therefore not fatal.  See Lowery
v. State, 843 S.W.2d 136, 141 (Tex. App.—Dallas 1992, pet. ref’d).

On appeal, Jones also argues for the
first time that the affidavit contains “double hearsay” regarding that second
confidential informant.  Because this
issue was not raised in the trial court, it has not been preserved for review
and any error has been waived.  See Tex.
R. App. P. 33.1(a)(1) (requiring party to raise specific ground in trial
court as prerequisite for appellate complaint).

d.    Staleness of information

Jones’s third, and in his
description, most critical contention is that the affidavit was insufficient to
show probable cause because it did not state a specific date on which the controlled
buy took place.  He argues this
information is the “linchpin for a finding of probable cause.”  This is a complaint about the “staleness” of
the information, because “[p]robable cause ceases to exist when, at the time
the search warrant is issued, it would be unreasonable to presume the items
remain at the suspected place.”  McKissick, 209 S.W.3d at 214; see also Flores v. State, 287 S.W.3d 307,
310 (Tex. App.—Austin 2009), aff’d, 319
S.W.3d 697 (Tex. Crim. App. 2010). 
Jones’s brief does not suggest any other relevance of the specificity of
the time of the controlled buy to the determination of probable cause.

In relevant part, the affidavit provides
the following temporal references related to the controlled buy:

.
. . Affiant recently received information from a confidential informant in
reference to crack cocaine being sold out of the residence located at 219 North
Pine Road.

 

After
obtaining the information about 219 North Pine Road Affiant began a narcotics
investigation . . . .

 

.
. . .

 

Affiant
arranged to make a narcotics buy from the suspect location, 219 North Pine Road
. . . [the controlled buy and field testing are then described in the past
tense].

 

          . . . . 

 

Based
on the information provided to Affiant by the source and other confidential
informants, and my own independent investigation, Affiant believes that a
violation of the Texas Controlled Substances Act is currently taking place at
219 North Pine Road, Texas City, Galveston County, Texas.

 

Subscribed and
sworn to before me by said Affiant on this the 6th day of November, 2007.

 

The affidavit includes several direct and indirect references
to the timing of the controlled buy.  First,
Bjerke described his contact with the first confidential informant as having
occurred “recently.”  After that meeting,
Bjerke “began a narcotics investigation” into the suspected ongoing criminal
activity of “crack cocaine being sold.” 
The investigation culminated in the controlled buy forming the basis for
probable cause, which was described as occurring “after” Bjerke “recently” met
with the first confidential informant. 
In addition, Bjerke attested that based on information from informants
and his own independent investigation, including the controlled buy, he
believed that drug offenses were “currently taking place at 219 North Pine
Road.”  The affidavit was dated November
6, 2007.  The search warrant was issued
at 12:24 a.m. on November 6.

In order to issue a warrant, a
magistrate is required “to determine (1) that it is now probable that (2) contraband . . . will be on the described premises (3) when the warrant is
executed.”  United States v. Grubbs, 547 U.S. 90, 96, 126 S. Ct. 1494, 1500 (2006);
see also Tex. Code Crim. Proc. Ann. art. 18.01(c) (West Supp. 2010)
(providing, in relevant part, that evidentiary search warrant may not be issued
unless sworn affidavit sets forth sufficient facts to establish probable cause
that items constituting evidence to be searched for are located at place to be
searched).  A magistrate must be able to
ascertain from the affidavit the closeness of time of the event that is the
basis for probable cause sufficient to issue the warrant based on an independent
judgment of probable cause.  See, e.g., Schmidt v. State, 659 S.W.2d 420, 421 (Tex. Crim. App. 1983).  The facts attested to in the affidavit must
be “so closely related to the time of the issu[ance] of the warrant as to
justify a finding of probable cause at that time.”  Sgro v.
United States, 287 U.S. 206, 210, 53 S. Ct. 138, 140 (1932); see also Peltier v. State, 626 S.W.2d 30, 32 (Tex. Crim. App. 1981); Heredia v. State, 468 S.W.2d 833, 835
(Tex. Crim. App. App. 1971).

We begin our analysis by noting that
the failure to include specific dates and times of relevant events described in
the affidavit in this case is not a model demonstration of the basis of the
affiant’s knowledge of circumstances suggesting a fair probability that
contraband or evidence of a crime will be found in a particular place, something
the State conceded during oral argument. 
The question before us, however, is whether the lack of a specific date
or time is fatal in this case or whether the totality of the affidavit
nonetheless justified the magistrate’s finding of probable cause.

Bjerke’s affidavit recited facts that
indicated a continuing drug operation was occurring: (1) the first
confidential informant told Bjerke that crack cocaine was being sold at 219
North Pine; (2) after speaking to the first confidential informant, Bjerke
then began his own investigation; (3) he arranged a controlled narcotics
buy at the house using the second confidential informant, who told Bjerke he
purchased what he believed to be a rock of crack cocaine; and (4) the rock
tested positive for cocaine in a field test. 
The affidavit also indicated that the information from the two
informants and Bjerke’s field test was closely related in time to the request
for the issuance of the warrant.  Bjerke stated that he “recently” received
information from the first confidential informant.  He then initiated an investigation and
arranged a controlled buy.  The
controlled buy occurred even more “recently” because it happened after Bjerke
received that initial tip and conducted an independent investigation.  As a result of the original tip and his own
independent investigation, Bjerke believed that a violation of the Texas
Controlled Substances Act was “currently” taking place at 219 North Pine.

“The amount of delay which will make
information stale depends upon the particular facts of the case, including the
nature of the criminal activity and the type of evidence sought.”  United
States v. Allen, 625 F.3d 830, 842 (5th Cir. 2010).  Facts indicating
ongoing criminal activity have long been recognized as diminishing the
importance of establishing a specific and immediate time period in the
affidavit: “Where the affidavit recites a mere isolated violation it would not
be unreasonable to imply that probable cause dwindles rather quickly with the
passage of time.  However, where the
affidavit properly recites facts indicating activity of a protracted and
continuous nature, a course of conduct, the passage of time becomes less
significant.”  United States v. Johnson, 461 F.2d 285, 287 (10th Cir. 1972), quoted in 2 LaFave, supra, § 3.7(a),
at 374; see also Bastida v.
Henderson, 487 F.2d 860, 864 (5th Cir. 1973); Bernard v. State, 807 S.W.2d 359, 365 (Tex. App.—Houston [14th
Dist.] 1991, no pet.).  “Conceding that
the decisions of appellate courts of other states are advisory, and not
controlling,” Ex parte Hernandez, 953
S.W.2d 275, 281 (Tex. Crim. App. 1997), we further observe that since
Gates was decided, three state
supreme courts have held that probable cause existed for issuance of a
search warrant in situations in which there was a continuing
drug operation and the search‑warrant affidavit referred to a recent
event.[4]  Professor LaFave has observed that reliance
upon the word “recently” can be problematic in some cases, particularly in
circumstances in which “the relevant facts are nothing more than a one-time
purchase or viewing of drugs, as to which only a brief period of time could
pass before the information could be stale.” 
2 LaFave, supra, § 3.7(b), at 396 (footnotes
omitted).  However, his treatise also
acknowledges that when confronted with an affidavit asserting that critical
events occurred “recently” or using other words to that effect, most courts
have been inclined to hold that this language will suffice for a showing of
probable cause.  Id. at 395 & n.76.  In
this regard, we also note that in Sutton
v. State, a pre‑Gates case,
the Court of Criminal Appeals held that an affidavit stating that “affiants
have recently received information from a confidential informant” was a sufficient
reference to time when considering the totality of the affidavit.  419 S.W.2d 857, 861 (Tex. Crim. App. 1967).  Bjerke’s affidavit referred to “recently”
conducted surveillance culminating in a controlled purchase of drugs from the
location to be searched and the officer’s resulting belief that a drug offense
“is currently taking place”; similarly, the Sutton
affiant’s reference to “recently” observed drugs was bolstered by his belief
that “narcotic drugs are now concealed”—references the Court of Criminal
Appeals held “were sufficiently definite and current to warrant the conclusion
that the act or event relied upon as a basis for probable cause occurred within
a reasonable time before the making of the affidavit, and authorized the
magistrate to issue the search warrant.” 
Id. at 860-61.

          Mindful that a
grudging, negative attitude towards warrants would be inconsistent with the
Fourth Amendment’s preference for searches conducted pursuant to warrants, see Gates,
462 U.S. at 236, 103 S. Ct. at 2331, we hold that the temporal references
within the affidavit allowed the magistrate to determine there was a
substantial basis for concluding that a search would uncover evidence of
wrongdoing.  We reach this conclusion because
the affidavit adequately suggested a continuing criminal operation, including
“recently” obtained information from the first confidential informant, from the
affiant’s own investigation, and from the second confidential informant who
made the controlled buy.  All of this
information supported the affiant’s belief that a violation was “currently”
taking place on a specified date when the affidavit was sworn, and at a time
which was no more than 24 minutes before the specified time when the search
warrant was signed.

e.     
Adequacy of affidavit

          Having
considered all of Jones’s contentions that the affidavit was inadequate and
applying standard of review set out in Illinois
v. Gates, we hold that the affidavit provided the magistrate with a
substantial basis for concluding that a search would uncover evidence of
wrongdoing at 219 North Pine Road.  In so
doing, we follow the example of Davis v.
State, an analogous circumstance in which the affidavit at issue was “far
from exemplary.”  202 S.W.3d 149, 157-58
(Tex. Crim. App. 2006).  The Court of
Criminal Appeals observed:

When too many inferences
must be drawn, the result is a tenuous rather than substantial basis for the
issuance of a warrant.  Best practice is
for the affiant expressly to include an officer’s experience, background
information, and previous associations with contraband so that little is left
to inference, and the magistrate has specifically articulated facts to
evaluate.  Otherwise, the officer/affiant
risks denial of his warrant, suppression of evidence at trial, or reversal on
appeal because the warrant lacks a substantial basis.  But the law requires that we defer to a
magistrate’s reasonable, common sense conclusions in assessing whether to issue
a search warrant.  Appellate courts must
allow for any reasonably available inferences and provide magistrates
appropriate deference.

Id. 
For the same reason in this case, we overrule Jones’s first issue.        

II.              
Franks motion

          In his
second issue, Jones contends the trial court erred in denying his motion
pursuant to Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674 (1978), whereby he sought to void the search
warrant and suppress all resulting evidence based on his allegation that
Bjerke’s affidavit contained false statements. 
In order to obtain a Franks
evidentiary hearing, a defendant must: (1) allege deliberate falsehood or
reckless disregard for the truth by the affiant, specifically pointing out the
portion of the affidavit claimed to be false; (2) accompany these allegations
with an offer of proof stating the supporting reasons; and (3) show that when
the portion of the affidavit alleged to be false is excised from the affidavit,
the remaining content is insufficient to support the issuance of the warrant.  Cates
v. State, 120 S.W.3d 352, 356 (Tex. Crim. App. 2003); Ramsey v. State, 579 S.W.2d 920, 922–23 (Tex. Crim. App. 1979)
(citing Franks, 438 U.S. at 171–72,
98 S. Ct. at 2684–85).

          Instead of
seeking an evidentiary hearing and ruling on the Franks motion before trial, Jones waited until after the State
rested in the guilt‑innocence phase of the trial.  Jones then presented his Franks motion to the trial court, in which he made an offer of
proof to show the affidavit was false.  This
argument consisted of his claim that before the search warrant was issued on
November 6, 2007, (1) no one ever entered his property at 219 North Pine Road
to purchase crack cocaine, (2) a person came by his property wanting to
purchase crack cocaine, but he turned that person away, and (3) a few days
later the same person came back and stood in the street, asking to purchase
crack cocaine, but Jones again turned the person away.  Jones called no witnesses and offered no
affidavits or other evidence, but referred only by reference to the previous
testimony of Bjerke.  In this regard,
Jones argued that when Bjerke testified, he was unable to recall details about
the controlled buy, such as the specific date or the amount paid to the
informant.  There also had been no
documentation that money paid to Jones during the controlled buy had been
recovered from Jones’s person or the search of his residence.

          We review a
trial court’s decision on a Franks
suppression issue under the same standard that we review a probable‑cause
deficiency, a mixed standard of review.  See Fenoglio
v. State, 252 S.W.3d 468, 473 (Tex. App.—Fort Worth 2008, pet. ref’d).  We give almost total deference to a trial
court’s rulings on questions of historical fact and application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor, while we
review de novo application‑of‑law‑to‑fact questions
that do not turn upon credibility and demeanor. 
See Johnson v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002)
(citing Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997)).  However,
in deciding a Franks motion the trial
court may consider not only the probable‑cause affidavit but also the
evidence offered by the party moving to suppress because this attack on the
sufficiency of the affidavit arises from claims that it contains false
statements.  See Franks, 438 U.S. at
155–56, 98 S. Ct. at 2676; Cates, 120
S.W.3d at 355–57; Fenoglio, 252
S.W.3d at 473.

          The only
evidence offered by Jones was in the form of a reference to the previous
testimony of Bjerke.  Jones did not
testify, so he did not offer evidence for the statements in his Franks motion offer of proof.  Jones offered the previous testimony of
Bjerke to show that he “had just made generalizations and has not been able to
specifically specify when this particular transaction occurred” and “could not
provide detailed specific information and specifically left out information
about the source and about how he conducted this information.”  None of the referenced testimony is direct
evidence that Bjerke’s affidavit was false. 
In addition, the trial court had the opportunity to weigh Bjerke’s
credibility and demeanor, and we defer to the trial court on that determination.  See
Johnson, 68 S.W.3d at 652–53.

          We overrule
issue two. 

III.          
Article 38.23 charge

          In
his third issue, Jones contends that the trial court erred in failing to give an
instruction to the jury, pursuant to Code of Criminal Procedure article
38.23(a).  See Tex. Code Crim. Proc. Ann.
art. 38.23(a) (West 2005).  The statute
provides:

          No evidence obtained by an officer or
other person in violation of any provisions of the Constitution or laws of the
State of Texas, or of the Constitution or laws of the United States of America,
shall be admitted in evidence against the accused on the trial of any criminal
case.

 

          In any case where the legal evidence
raises an issue hereunder, the jury shall be instructed that if it believes, or
has a reasonable doubt, that the evidence was obtained in violation of the
provisions of this Article, then and in such event, the jury shall disregard
any such evidence so obtained.

 

Id.  A defendant’s right to the submission of an
instruction under article 38.23(a) “is limited to disputed issues of fact that
are material to his claim of a constitutional or statutory violation that would
render evidence inadmissible.”  Madden
v. State, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007).

          Before a defendant is entitled to the submission of a jury
instruction under article 38.23(a), he must meet three requirements:

(1)     the evidence heard by the jury must raise an issue of fact;

 

(2)     the
evidence on that fact must be affirmatively contested; and

 

(3)     that contested factual issue must be material to the lawfulness
of the challenged conduct in obtaining the evidence.

Madden, 242 S.W.3d at 510.  On appeal, Jones claims the trial court
should have given the instruction because there was a disputed fact issue
concerning the number of controlled buys at 219 North Pine, i.e., two controlled buys versus one.  Bjerke testified about one controlled buy,
but he did not testify that there was only one controlled buy.  Another police officer’s testimony that he
observed two different controlled buys involving two different informants on
two different days is not necessarily inconsistent with Bjerke’s
testimony.  Jones therefore cannot meet
the second requirement for an article 38.23(a)
instruction, that evidence on the number of controlled buys was affirmatively
contested.  He also has failed to
demonstrate the materiality of this alleged fact dispute to the lawfulness of
the officers’ conduct.

          Accordingly,
there was no error in the jury charge from the absence of any article 38.23(a)
instruction regarding custody because there was no conflict in the evidence.  We overrule Jones’s third issue.

IV.          
Request to identify confidential
informant

          In
his fourth issue, Jones contends that the trial court erred in not disclosing the
identity of the State’s initial confidential informant under Rule 508(c)(3) of
the Texas Rules of Evidence:

          Legality
of obtaining evidence.  If
information from an informer is relied upon to establish the legality of the
means by which evidence was obtained and the court is not satisfied that the
information was received from an informer reasonably believed to be reliable or
credible, it may require the identity of the informer to be disclosed.  The court shall, on request of the public
entity, direct that the disclosure be made in camera.  All counsel and parties concerned with the
issue of legality shall be permitted to be present at every stage of
proceedings under this subdivision except a disclosure in camera, at which no
counsel or party shall be permitted to be present.  If disclosure of the identity of the informer
is made in camera, the record thereof shall be sealed and preserved to be made
available to the appellate court in the event of an appeal, and the contents
shall not otherwise be revealed without consent of the public entity.

Tex.
R. Evid.
508(c)(3).  At trial, Jones moved for
disclosure of the identity of the first confidential informant, specifically arguing
that Bjerke had no basis to believe that the first informant was reliable or credible.  The State objected, and the trial court
sustained the objection.

          On appeal, Jones contends the trial
court erred on two grounds he did not preserve at trial: (1) the affidavit did
not provide any meaningful details as to any controlled buys at 219 North Pine
and (2) Bjerke allegedly provided misleading information concerning the first
confidential informant.  Those issues
have been waived.  See Tex. R. App. P.
33.1(a)(1).  The remaining issue raised
on appeal, that Bjerke had no basis to believe that the
first informant was reliable or credible, was preserved in the trial court.

          Jones’s argument about the reliability or credibility of
the first informant fails for the same reason it did not support suppression of evidence from the
search.  The second
confidential informant supplied the same information to the police,
i.e., that Jones was selling crack cocaine. 
Because the failure of the affidavit to
establish the first informant’s reliability or credibility did not affect the
legality of the search warrant, the trial court committed no error in refusing
to direct the disclosure of the first confidential informant’s identity.  See
Tex. R. Evid. 508(c)(3); Lowery,
843 S.W.2d at 141.  We overrule Jones’s
fourth issue.

V.              
Sufficiency of the evidence of possession
of firearm by a felon

          Jones’s
fifth and sixth issues challenge the legal and factual sufficiency of the
evidence to support his conviction for possession of a firearm by a felon.  Jones stipulated at trial that he had been
convicted of a felony less than five years before the date of the charged
offense.  On appeal he specifically
attacks the sufficiency of the evidence to show “links” between himself and the
weapons found.  See Evans v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).

a.    
Standard of review

In assessing legal
sufficiency, we must consider the entire trial record to determine whether,
viewing the evidence in the light most favorable to the verdict, a rational
jury could have found beyond a reasonable doubt that the accused committed all
essential elements of the offense.  Jackson
v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); Drichas
v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); Burden v. State,
55 S.W.3d 608, 612 (Tex. Crim. App. 2001). We must “evaluate all of the
evidence in the record, both direct and circumstantial, whether admissible or
inadmissible.”  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999). 
Because it is the function of the trier of fact to resolve any conflict
of fact, to weigh any evidence, and to evaluate the credibility of any
witnesses, we do not reevaluate the weight and credibility of the evidence, but
ensure only that the jury reached a rational decision.  See id. at 740; Adelman v. State,
828 S.W.2d 418, 421 (Tex. Crim. App. 1992); see also Matson v. State,
819 S.W.2d 839, 843 (Tex. Crim. App. 1991); Muniz v. State, 851 S.W.2d
238, 246 (Tex. Crim. App. 1993).  We
therefore resolve any inconsistencies in the evidence in favor of the verdict, Matson,
819 S.W.2d at 843, and “defer to the jury’s credibility and weight
determinations.” Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App.
2006).

For challenges to the factual sufficiency of the evidence, we
also apply the Jackson v. Virginia standard
of review in the light most favorable to the verdict.  See
Brooks v. State, 323 S.W.3d 893, 894–95 (plurality op.), 926 (Cochran, J.,
concurring) (Tex. Crim. App. 2010); see
also Howard v. State, No. PD-0521-10, 2011 WL 798673, at *1 n.2 (Tex. Crim.
App. Mar. 9, 2011) (characterizing Brooks
as having “abolished” factual-sufficiency review).  “To establish unlawful possession of a
firearm by a felon, the State must show that the accused was previously
convicted of a felony offense and possessed a firearm after the conviction and
before the fifth anniversary of his release from confinement or from community
supervision, parole, or mandatory supervision, whichever date is later.”  James
v. State, 264 S.W.3d 215, 218 (Tex. App.—Houston [1st Dist.] 2008, pet.
ref’d); see Tex. Penal Code § 46.04(a)(1).  “Possession is a voluntary act if the
possessor knowingly obtains or receives the thing possessed or is aware of his
control of the thing for a sufficient time to permit him to terminate his
control.”  Id.; see Tex. Penal Code § 6.01(b) (West
2003).

“If
the firearm is not found on the defendant or is not in his exclusive
possession, the evidence must affirmatively link him to the firearm.”  Id.
at 218–19.  The State may establish
possession by proving links which demonstrate that the defendant “was conscious
of his connection with the weapon and knew what it was.”  Id.
at 219.  This rule protects the innocent
bystander—such as a relative, friend, or even stranger to the actual
possessor—from conviction merely because of his fortuitous proximity to a firearm
belonging to someone else.  See Evans, 202 S.W.3d at 161–62; Smith v. State, 176 S.W.3d 907, 916
(Tex. App.—Dallas 2005, pet. ref’d).

A nonexclusive list of factors that
may establish a link between a defendant and firearms found inside a house
which was not in the defendant’s exclusive control includes whether: (1) the
defendant was present at the time of the search; (2) the defendant was the
owner of or had the right to control the location where the firearm was found; (3) the
firearm was in plain view; (4) the defendant was in close proximity to and
had access to the firearm; (5) firearms or other contraband was found on
the defendant; (6) the defendant attempted to flee; (7) conduct by
the defendant indicated a consciousness of guilt, including extreme nervousness
or furtive gestures; (8) the defendant had a special connection or
relationship to the firearm; (9) the place where the firearm was found was
enclosed; and (10) affirmative statements connected the defendant to the firearm,
including incriminating statements made by the defendant when arrested.  See Williams
v. State, 313 S.W.3d 393, 397–98 (Tex. App.—Houston [1st Dist.] 2009, pet.
ref’d); James, 264 S.W.3d at 219; see also Evans, 202 S.W.3d at 162 & n.12.  “It is not the number of links that is
dispositive, but rather the logical force of all of the evidence, direct or
circumstantial.”  Williams, 313 S.W.3d at 398.

b.   
Legal sufficiency

Jones contends that the evidence was
legally insufficient to link him to the firearms found at 219 North Pine.  In this regard, he emphasizes that he never
admitted owning the firearms and his fingerprints were not found on them.  He was not inside the house at the time of
the search, and at least three other people had access to the house.  Also, a woman’s handbag and clothing were
found in the bedroom where the rifle was found.

But
viewing the evidence in the light most favorable to the verdict, a rational
jury could have found beyond a reasonable doubt that Jones possessed a
firearm.  See Jackson, 443 U.S. at 319, 99 S. Ct. at
2789.  The undisputed evidence at trial
showed that: (1) Jones was living at 219 North Pine and was paying rent
there; (2) the rifle was located in plain view in the same room where he
was captured by police and in the same room in which mail addressed to him and
a receipt to him at that address was located; and (3) his wallet and
medication prescribed for him were located in the other bedroom near the pistol.  We recognize that there was also evidence of
the presence of others at the time of the search and of women’s clothing,
shoes, and a bag in the bedroom where the rifle was located, as well as a lack
of usable prints on either weapon resulting in an absence of fingerprint
evidence linking the defendant to the weapons.  However, in a legal-sufficiency review we are
required to defer to the jury’s weight determinations and resolve
inconsistencies in the evidence in favor of the verdict.  See Marshall, 210 S.W.3d at 625; Matson,
819 S.W.2d at 843.  Viewing the evidence
in the light most favorable to the verdict, we conclude that the logical force
from these links is sufficient for the jury to have concluded beyond a
reasonable doubt that Jones exercised care, custody, control, or management
over at least the pistol.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789;
Sambath Nhem v. State, 129 S.W.3d
696, 699 (Tex. App.—Houston
[1st Dist.] 2004, no pet.) (holding that defendant’s driver’s license and
mobile phone bills in close proximity to contraband were sufficient to link him
to controlled contraband).

Jones
refers us to Wynn v. State, 847
S.W.2d 357 (Tex. App.—Houston [1st Dist.]), aff’d
on other grounds, 864 S.W.2d 539 (Tex. Crim. App. 1993), in support of his
contention that the evidence was legally insufficient.  We consider Wynn to be factually and legally distinguishable.  In Wynn,
unlike the present cases, the defendant was not in the house when the firearm
was found and the firearm was found in a room containing no links to him.  Wynn
also did not involve a possession of a firearm charge, but rather dealt with
whether the defendant “used or exhibited a firearm” in the commission of an
offense.  It therefore was not analyzed
under the “links” doctrine applicable to possession cases.  Wynn
was also decided under the no-longer-applicable “reasonable hypothesis
analytical construct” and so was analyzed for sufficiency under a different
standard than we are required to apply in this case.  See
Blackman v. State, No. PD-0109-10,
slip op. at 11 (Tex. Crim. App. Apr. 13, 2011); (noting that prosecution has no
affirmative duty to rule out every hypothesis except that of guilt); Geesa v. State, 820 S.W.2d 154, 161
(Tex. Crim. App. 1991) (rejecting use of reasonable hypothesis analytical
construct), overruled on other grounds,
Paulson v. State, 820 S.W.2d 154 (Tex. Crim. App. 2000). 

Considering Jones’s legal-sufficiency
arguments and all of the evidence in the light most favorable to the verdict,
the jury could have found the essential elements of possession of a firearm by
a felon.  We overrule Jones’s fifth
issue.

c.     
Factual sufficiency

In addition to the
arguments made in support of his legal-sufficiency argument, Jones argues that
the evidence was not factually sufficient based upon the following factors: (1) neither
firearm was conveniently accessible to him at the time of his arrest; (2) he
made no furtive gestures; and (3) he had no special connection to the
firearms.  Nevertheless, as previously noted,
the undisputed evidence at trial showed that Jones was living at 219 North Pine
and was paying rent there; the rifle was located in plain view in the same room
where he was found by police and in the same room in which mail addressed to
him and a receipt to him at that address was located; and his wallet and
prescribed medication were located near the pistol.

Reviewing Jones’s factual-sufficiency arguments under the
legal-sufficiency standard and considering all of the evidence in the light
most favorable to the verdict, the jury could have found the essential elements
of possession of a firearm by a felon.  Accordingly,
the evidence is sufficient.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.

We overrule Jones’s sixth issue.

Conclusion

We affirm the judgments of the trial court.

 

 

 

 

                                                          Michael
Massengale

                                                          Justice


 

Panel consists of Justices Keyes,
Sharp, and Massengale.

Justice Sharp, dissenting.

Publish.  Tex.
R. App. P. 47.2(b)











[1]        See Tex.
Penal Code Ann. § 46.04(a)(1), (e) (West Supp. 2010) (third‑degree
felony) (trial court case number 07CR3567, appellate case number 01‑08‑00828‑CR).





[2]        Texas Controlled Substances Act, Tex. Health & Safety Code Ann.
§§ 481.102(a)(3)(D), 481.112(a), (d) (West 2010) (first‑degree
felony) (trial court case number 07CR3568, appellate case number 01‑08‑01015‑CR).





[3]        Texas Controlled Substances Act, Tex. Health & Safety Code Ann.
§§ 481.103(a)(1), 481.113(a), (d) (West 2010) (first‑degree
felony) (trial court case number 07CR3569, appellate case number 01‑08‑01016‑CR).





[4]        See State
v. Walston, 768 P.2d 1387, 1390 (Mont. 1989) (holding that continuing
criminal activity such as drug dealing coupled with confidential informant’s
statement that he had “recently” heard defendant state he was growing and
selling marijuana was not so stale as to negate probable cause); Commonwealth v. Jones, 668 A.2d 114, 118
(Pa. 1995) (affidavit’s evidence of continuing drug operation coupled with
confidential informant’s statement that he “has just” observed contraband was
not insufficient merely because affidavit did not contain a specific date); Huff v. Commonwealth, 194 S.E.2d 690,
716 (Va. 1993) (quoting Reynolds v. State,
238 So. 2d 557, 558 (Ala. Crim. App. 1970)) (affidavit’s reference to repeated
drug distribution coupled with statement that events occurred “in recent weeks”
and “on a recent date” was not insufficient; “A statement in an affidavit for a
search warrant that an informant had ‘recently’ seen or purchased narcotic
drugs, when connected with other language that would lead to the conclusion
that the unlawful condition continued to exist on those premises at the time of
the application for the warrant, has been held sufficient to show the time when
the alleged violation took place.”).